## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

### CASE NO.: 1:22-cv-01082

PAAKLINE, LLC,

                    Plaintiff,

v.

DONGGUAN AIRUISE TRADING CO., LTD., et al.,

                    Defendants.

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff PAAKLINE, LLC ("PK" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendants, the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto (collectively "Defendants"), who are pirating Plaintiff's marketing product photographs by unauthorized use, reproduction, distribution and public display and also are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's marks, within this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff PK brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Texas's common law.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

2.      Plaintiff PK brings this action for willful infringement and copyright piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq*., and The All Writs Act, 28 U.S.C. § 1651(a).

## SUBJECT MATTER JURISDICTION

3.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 301.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Texas and this district, through at least the internet-based e-commerce stores accessible in Texas and operating under their Seller IDs.

7.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Texas cause Plaintiff injury in Texas, and Plaintiff's claims arise out of those activities.

8.      Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to

jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not resident in the United States and therefore there is no district in which an action may otherwise be brought.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1400(a) because Defendants or their agents are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

## THE PLAINTIFF

12.     PK is a Montana Limited Liability Company with its principal place of business in Helena, Montana.

13.      PK is a company founded in 2020 by Patrick Williams and Kimm Reid. PK focuses on developing innovative projects by creating prototypes from their ideas with three-dimensional printers. One of those first and well-known tools is the innovative new line of painting tools known as the CleanSleeve.

14.     PK owns the trademarks and copyrights described below that are the subject of this action.

15.     PK's products are sold through different distributions channels which include online and in store, like Amazon.com, TheGrommet.com, TheBuildsters.com, Starcrest.com,

Touchupcup.com, KCI Tools, PK's own website https://www.paakline.com/, and other authorized retailers.

16.     Plaintiff offers for sale and sells its products within the state of Texas, including this district, and throughout the United States.

17.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of infringers, such as Defendants herein.

18.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

19.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

20.     The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brands.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A.      PLAINTIFF'S TRADEMARK'S RIGHTS

21.     Plaintiff created, and sells a product known as CleanSleeve, under the federally registered trademarks PAAKLINE & DESIGN, PAAKline and PAAKline CleanSleeve (collectively the "PK Marks"), which consists in a hand-operated tool made from a resistant, smooth, lightweight, and durable plastic, featuring hoop openings on either end of different

measures, for the specific purpose of cleaning, scraping, and removing excess wet paint and water from paint roller sleeve covers without require any other tool.

22.    Plaintiff is the owner of all rights in and to the PK Marks for "a plastic, hand-operated tool, featuring hoop openings on either end, for the specific purpose of cleaning, scraping, and removing excess wet paint from paint roller sleeve covers" in International Class 8 shown in the table below.

| **Mark** | **U.S. Reg. No.** | **IC** | **First Use** | **First Use in Commerce** | **Reg. Date** | **Exhibit** |
|---|---|---|---|---|---|---|
| PAAKLINE & DESIGN <br><br> PAAKline | 6772728 | 8 | 11/10/2020 | 02/20/2021 | 06/28/2022 | 1A |
| PAAKline (Standard Characters) | 6772729 | 8 | 11/10/2020 | 02/20/2021 | 06/28/2022 | 1B |
| PAAKline CleanSleeve (Standard Characters) | 6779057 | 8 | 11/10/2020 | 02/20/2021 | 07/05/2022 | 1C |

23.    The PK Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1.

24.    The PK Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and innovative CleanSleeve products.

25.    The PK Marks are displayed directly on top of Plaintiff's products and on different sides of the packaging used for selling the products. Shown below are the PK Marks as they are used in relation with Plaintiff's products and its packaging.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK






26.     The PK Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality and innovative CleanSleeve products for an extended period of time.

27.     The PK Marks have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

28.     The PK Marks have never been assigned or licensed to any of the Defendants.

29.     The PK Marks are a symbols of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

30.     Plaintiff has carefully monitored and policed the use of the PK Marks.

31.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the PK Marks in connection with PK's products. PK has invested between $2200 and $2500 on marketing and promotion, and over 250 hours of time. This time was used for creating videos, posting and promoting those videos. The Copyrighted Marketing Photographs are a product of these promotional videos.

32.     Plaintiff has extensively used, advertised, and promoted the PK Marks in the United States in association with the sale of high-quality and innovative CleanSleeve products.

33.     Plaintiff has spent substantial resources promoting the PK Marks and CleanSleeve products bearing or sold under those marks.

34.     Sales of products bearing or sold under the PK Marks generated approximately more than $400,000 per year.

35.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the PK Marks as being high-quality and innovative CleanSleeve products sponsored and approved by Plaintiff.

36.     Accordingly, the PK Marks have achieved secondary meaning as identifiers of high-quality and innovative CleanSleeve products.

37.     Genuine CleanSleeve products bearing or sold under the PK Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

38.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

39.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

40.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the PK Marks.

## B.     PLAINTIFF'S COPYRIGHT RIGHTS

41.     Plaintiff advertises, markets, promotes and sells its CleanSleeve products using photographs protected by copyright and registered with the Copyright Office (hereinafter, referred to as the "Copyrighted Marketing Photographs").

42.     Plaintiff duly registered its photographs as visual material titled "PAAKline Product Pictures 2021" under the registration number VA 2-286-150 on February 6, 2022. A true and correct copies of Plaintiff's Copyright Certificate of Registration and the photographs it applies to are attached hereto as Exhibit 2.

43.     Genuine CleanSleeve products are widely legitimately advertised and promoted by Plaintiff and its authorized distributors using Plaintiff's Copyrighted Marketing Photographs.

44.     The Copyrighted Marketing Photographs show Plaintiff's high-quality and innovative CleanSleeve products' design and its utility because they depict a sequence that recreates the gentle swipe movements for removing paint and water from paint rollers sleeve. The Copyrighted Marketing Photographs illustrate the advantages that Plaintiff's products offer to prospective CleanSleeve customers and show its design features.

45.    The Copyrighted Marketing Photographs are valuable to Plaintiff's business and are part of its intellectual property assets. The stylized word PAAKLINE can be seen on the CleanSleeve products featured in the Copyrighted Marketing Photographs. The Copyrighted Marketing Photographs show CleanSleeve product's origin and design features. The Copyrighted Marketing Photographs help build brand reputation, confidence and goodwill, which result in consumer loyalty.

46.    PK has never granted authorization to anyone to advertise, market or promote unauthorized goods using PK's Copyrighted Marketing Photographs.

## **DEFENDANTS**

47.    Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

48.    Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

49.    Defendants are engaged in business in Texas but have not appointed an agent for service of process.

50.    Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

51.    Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

52.     Defendants are the past and present controlling forces behind the sale of products using infringements of Plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

53.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods using infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

54.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Texas through the advertisement, offer to sell, sale, and/or shipment of infringing goods into the State.

55.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

56.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal infringing activities.

57.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods using infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

58.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

59.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of products using infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement scheme and cause harm to Plaintiff.

60.     Defendants' individual seller stores using infringing versions of the Copyrighted Marketing Photographs and products denominations and descriptive content like the ones used by Plaintiff in relation with its high-quality and innovative CleanSleeve products through its legitimate sales channels, including in some of them the use of similar or identical marks to one or more of PK Marks, are indexed on search engines and compete directly with Plaintiff for space in search results.

61.     The appearance of Defendants' individual seller stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of its intellectual property, especially the Copyrighted Marketing Photographs featuring its high-quality and innovative CleanSleeve products and supporting them in the selling process, and the PK Marks.

62.     Defendants are infringing of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

63.     Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Texas and causing Plaintiff's harm and damage within this jurisdiction.

64.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

65.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' INFRINGING ACTIVITIES

66.     Plaintiff's business success regarding its high-quality and innovative CleanSleeve products, a significant portion of which is attributable to the use of the Copyrighted Marketing Photographs and PK Marks, has resulted in infringement of those copyrighted photographs and in some cases of those marks.

67.     Defendants are using infringing versions of the Copyrighted Marketing Photographs or substantially similar photographs, and similar or identical marks to one or more of the PK Marks, for promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's high-quality and innovative CleanSleeve products in interstate commerce (the "Infringing Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

68.     Defendants are using pirated copies of the Copyrighted Marketing Photographs together with denominations and descriptive contents similar to the ones used by Plaintiff in relation with its high-quality and innovative CleanSleeve products through its legitimate sales channels, and in some cases they are using similar or identical marks to one or more of PK Marks, to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

69.     Plaintiff has used the Copyrighted Marketing Photographs and PK Marks extensively and continuously before Defendants began using pirated material of these copyrighted photographs or substantially identical photographs, and similar or identical marks to one or more of PK Marks, for offering confusingly similar imitations of Plaintiff's merchandise.

70.     Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating product listing materials for their products that capture the total concept and feel of Plaintiff's Copyrighted Marketing Photographs and in some cases by using similar or identical marks to one or more of PK Marks.

71.     Defendants derive significant value from the pirated material through using the Copyrighted Marketing Photographs or substantially similar photographs, and in some cases from using similar or identical marks to one or more of PK Marks, to draw consumers to their online stores.

72.     The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine CleanSleeve goods like the ones featured in the Copyrighted Marketing Photographs and sold under PK Marks, originating from, associated with, and approved by Plaintiff.

73.     Defendants advertise their e-commerce stores, including their pirated Copyrighted Marketing Photographs and in some cases similar or identical marks to one or more of PK Marks, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

74.     In so advertising their stores and products, Defendants improperly and unlawfully use infringing versions of the Copyrighted Marketing Photographs or substantially similar

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

photographs, and in some cases use similar or identical marks to one or more of PK Marks, without Plaintiff's permission.

75.     As part of their overall infringement scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of the Copyrighted Marketing Photographs or substantially similar photographs and the PK Marks.

76.     Specifically, Defendants are using pirated versions of the Copyrighted Marketing Photographs or substantially similar photographs, and in some cases similar or identical marks to one or more of PK Marks, in order to make their e-commerce stores selling goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

77.     By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine and innovative CleanSleeve goods featured in the Copyrighted Marketing Photographs and sold under PK Marks.

78.     Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Plaintiff's business and its intellectual property assets, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

79.     Defendants are concurrently conducting and targeting their infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

80.     As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

81.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Copyrighted Marketing Photographs and PK Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

82.     Defendants' use of infringing versions of the Copyrighted Marketing Photographs or substantially similar photographs, and in some cases use similar or identical marks to one or more of PK Marks, including the reproduction, distribution, public display, promotion, advertisement, offers to sale and sale of their infringing goods, is without Plaintiff's consent or authorization.

83.     Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

84.     If Defendants' intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

85.     Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

86.     Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods featured in the Copyrighted Marketing Photographs and sold under PK Marks and Defendants' identical goods, which there is not.

87.     Defendants' payment and financial accounts connected to their marketplace seller accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing, and unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores, or seller identification names being used and/or controlled by them.

88.     Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

89.     Plaintiff is suffering irreparable injury and has suffered substantial damages as result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights.

90.     If Defendants' infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

91.      The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, distribution, public display, use, advertisement, promotion, offers to sell, and sale of their infringing goods, with pirated versions of Plaintiff's Copyrighted Marketing Photographs or substantially similar photographs, and in some cases with similar or identical marks to one or more PK Marks.

92.     Defendants reap the benefits of theirs unauthorized reproduction, distribution and public display of Plaintiff's Copyrighted Marketing Photographs through their receipt of

substantial revenue, including substantial profit, driven by sales of their products using product listings that infringe Plaintiff's Copyrighted Marketing Photographs.

93.     Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's Copyrighted Marketing Photographs and PK Marks.

94.     Plaintiff has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

95.     Plaintiff incorporates the allegations of paragraphs 1 through 94 of this Complaint as if fully set forth herein.

96.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of one or more of the PK Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

97.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the PK Marks.

98.     Defendants are continuously infringing and inducing others to infringe one or more of the PK Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

99.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

100.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

101.    Defendants' above-described illegal actions constitute counterfeiting and infringement of one or more of the PK Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

102.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

103.    If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

104.    Plaintiff incorporates the allegations of paragraphs 1 through 94 of this Complaint as if fully set forth herein.

105.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of one or more of the PK Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

106.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the PK Marks are virtually identical in appearance to Plaintiff's genuine goods.

107.    Defendants' Counterfeit Goods are different in quality from Plaintiff's goods and are of much lower quality.

108.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

109.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

110.     Defendants have authorized infringing uses of one or more of the PK Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

111.     Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

112.     Defendants are using counterfeits and infringements of one or more of the PK Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

113.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

114.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

115.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## COUNT III – COMMON LAW UNFAIR COMPETITON

116.    Plaintiff incorporates the allegations of paragraphs 1 through 94 of this Complaint as if fully set forth herein.

117.    This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that are virtually identical to one or more of the PK Marks in violation of Texas's common law of unfair competition.

118.    Defendants' activities complained of herein constitute unfair methods of competition.

119.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of one or more of the PK Marks.

120.    Defendants are also using counterfeits and infringements of one or more of the PK Marks to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

121.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of one or more of the PK Marks.

122.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

123.     Plaintiff incorporates the allegations of paragraphs 1 through 94 of this Complaint as if fully set forth herein.

124.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing or sold under one or more of the PK Marks.

125.     Plaintiff is the owner of all common law rights in and to the PK Marks.

126.     Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of one or more of the PK Marks.

127.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing or sold under one of more of the PK Marks.

128.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT V – COPYRIGHT INFRINGEMENT

129.     Plaintiff incorporates the allegations of paragraphs 1 through 94 of this Complaint as if fully set forth herein.

130.     Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

131.     Pursuant to 17 U.S.C. § 411 (a), Plaintiff registered its copyrights for its photographs.

132.    Defendants directly infringed Plaintiff's exclusive rights in its copyright registered photographs under 17 U.S.C. § 106.

133.    Defendants copied, displayed, and distributed Plaintiff's Copyrighted Marketing Photographs and/or prepared derivative works based upon Plaintiff's Copyrighted Marketing Photographs in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

134.    Defendants' conduct constitutes willful and direct copyright infringement of Plaintiff's Copyrighted Marketing Photographs.

135.    Defendants profited from the direct infringement of the exclusive rights of Plaintiff in the Copyrighted Marketing Photographs at issue in this case under the Copyright Act.

136.    Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

137.    On information and belief, there is a business practice of infringement by Defendants.

138.    On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

139.    Plaintiff has been damaged by the infringement.

140.    The harm to Plaintiff is irreparable.

141.    Plaintiff is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

142.    Plaintiff is entitled to recover its actual damages and/or statutory damages, at its election.

143.    Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the PK Marks; from using the PK Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the PK Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff; from copying, displaying, distributing or creating derivative works of Plaintiff's copyrighted Works.

b.  Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the PK Marks, that copy, display, distribute or use derivative works of Plaintiff's copyrighted Works.

c.  Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. §503.

d.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable

governing Internet marketplace website operators and/or administrators

for the Seller IDs who are provided with notice of an injunction issued by

this Court disable and/or cease facilitating access to the Seller IDs and any

other alias seller identification names being used and/or controlled by

defendants to engage in the business of marketing, offering to sell, and/or

selling goods bearing counterfeits and infringements of the PK Marks.

e.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and

this Court's inherent authority that, upon Plaintiff's request, any

messaging service and Internet marketplace website operators,

administrators, registrar and/or top level domain (TLD) registry for the

Seller IDs who are provided with notice of an injunction issued by this

Court identify any e-mail address known to be associated with

Defendants' respective Seller IDs.

f.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and

this Court's inherent authority that upon Plaintiff's request, any Internet

marketplace website operators and/or administrators who are provided

with notice of an injunction issued by this Court permanently remove from

the multiple platforms, which include, inter alia, a direct platform, group

platform, seller product management platform, vendor product

management platform, and brand registry platform, any and all listings and

associated images of goods bearing counterfeits and/or infringements of

the PK Marks via the e-commerce stores operating under the Seller IDs,

including but not limited to the listings and associated images identified

by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the PK Marks associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the PK Marks.

g.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing the PK Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

h.   Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

i.   Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that

the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

j.  Entry of an Order requiring Defendant to account to and pay Plaintiff for all profits and damages resulting from Defendant's copyright infringement, or statutory damages (at Plaintiff's election), for all infringements involved in the action, with respect to any one work, for which Defendant is liable in a sum of not less than $750 or more than $30,000 as the Court considers just pursuant to 17 U.S.C. §504(c)(1), or to the extent the Court finds that infringement was committed willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2).

k.  Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

l.  Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-

commerce store names used by Defendants presently or in the future, as

well as any other related accounts of the same customer(s) and any other

accounts which transfer funds into the same financial institution

account(s) and remain restrained until such funds are surrendered to

Plaintiff in partial satisfaction of the monetary judgment entered herein.

m.  Entry of an award of pre-judgment interest on the judgment amount.

n.  Entry of an Order for any further relief as the Court may deem just and

proper.

DATED: October 25, 2022                    Respectfully submitted,

*/s/  Joel B. Rothman*
JOEL B. ROTHMAN
joel.rothman@sriplaw.com
CRAIG A. WIRTH
craig.wirth@sriplaw.com
LAYLA T. NGUYEN
layla.nguyen@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

and

ELIEZER LEKHT
eliezer.lekht@sriplaw.com

**SRIPLAW, P.A.**
175 Pearl Street
Third Floor
Brooklyn, NY 11201
332.600.5599 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff PAAKline, LLC*